# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TINA ANN CLARKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:21-CV-1288 PLC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tina Ann Clarke seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

### I.   Background and Procedural History

On March 19, 2020, Plaintiff, who was born in August 1966, filed an application for SSI,[1] alleging she was disabled as of June 15, 2008, as a result of: "blind or low vision," bone spurs, "cannot walk more than 10 feet," "back surgery," hepatitis C, liver disease, degenerative disc disease, neck pain, post-traumatic stress disorder (PTSD), and depression. (Tr. 113-114, 120-121, 251-252, 276). Plaintiff's alleged onset date fell within the period of a prior application, which the Social Security Administration (SSA) denied on July 1, 2019. (Tr. 98-112) Plaintiff did not appeal the prior denial, so the relevant period of adjudication for her most recent claim begins the day after that decision, or July 2, 2019. (Tr. 54-55)

---

[1] Plaintiff also filed an application for widow's insurance benefits under Title II of the Act but does not appeal the ALJ's decision related to this application.

The SSA denied Plaintiff's current claim, and she filed a timely request for reconsideration. (Tr.  113-119, 120-125, 156-158) Upon reconsideration, the SSA denied Plaintiff's claim again, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 126-134, 135-143, 159-162, 163-164, 165-167)  The SSA granted Plaintiff's request for review and conducted a hearing on October 19, 2020. (Tr. (Tr.  68-94)  On January 21, 2012, the ALJ issued a decision finding Plaintiff not disabled. (Tr.  51-67)  Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6,  245-248)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

**II.     Evidence Before the ALJ[2]**

A.  Plaintiff's Testimony

At the October 19, 2020 hearing, Plaintiff was 54 years old and lived with a friend. (Tr. 81) Plaintiff had a ninth-grade education and no relevant work experience. (Tr.  77-78)

Plaintiff experiences pain in her low back and in her neck from the back of her head to her shoulders. (Tr.  80)  In 2019, Plaintiff underwent x-rays and MRIs on her neck and spine. (Tr.  86) Plaintiff testified that, based on this imaging, an orthopedic doctor recommended Plaintiff immediately stop smoking and have "surgeries" otherwise "she will be paralyzed" from nerve damage. (Tr.  77, 86-87)  Plaintiff did not go forward with the surgeries at that time because she was "scared." (Tr.  87, 78) Plaintiff is now "mentally ready" for the surgeries and scheduled an upcoming appointment with an orthopedic doctor. (Tr.   87) Plaintiff made the appointment

---

[2] Plaintiff challenges the ALJ's residual functional capacity (RFC) determination with respect to her cervical and lumbar spine impairments. Because Plaintiff does not challenge the ALJ's determinations regarding her other physical impairments and her mental impairments or the ALJ's assessment of these conditions in determining her RFC, the Court limits its discussion of the evidence related to Plaintiff's cervical and lumbar spines.

2

"[b]ecause I'm really getting bad. My back's really getting bad, it's really getting [worse], and I've got to do these surgeries." (Tr. 87) Plaintiff stated her "spine is deteriorating," that she "has bone spurs in her neck and lower back," and that her lower "back is broken in three places[.]" (Tr. 77)

Plaintiff testified she cannot "lift anything," "stand up for long," "lay for long," or sleep due to her neck and low back pain. (Tr. 77) Plaintiff's son does her household chores and laundry because Plaintiff is unable to do them. (Tr. 82) Plaintiff's son and roommate do Plaintiff's grocery shopping and Plaintiff does not cook other than to use the microwave. (Tr. 82) During a typical day, Plaintiff does not watch television, walk, or do anything other than talk to her roommate and son. (Tr. 84, 86) Plaintiff quit smoking a week before the hearing in anticipation of having neck and back surgery in the future. (Tr. 84)

B.  Functional and Disability Reports

In a functional reported dated April 1, 2020, Plaintiff's reported the following about her typical daily activities: "I do nothing, I cry, I don't cook or help with house (clean). I try to walk but I really don't like to it hurts [too] much." (Tr. 264) Plaintiff reported pain and difficulties in attending to her personal care. (Tr. 264) Plaintiff stated she did not shop, do any house or yard work, and did not go outside because "it takes [too] long to go down the steps. It hurts my back." (Tr. 265-67) Plaintiff does not drive but does ride in the car. (Tr. 266) Plaintiff reported she was unable to "lift at all" and experiences pain when walking, standing, and sitting. (Tr. 268) Plaintiff stated she was able to walk only a "couple of steps" before needing to stop and rest. (Tr. 268) Plaintiff reported she had no interests or hobbies and she is "always in pain and crying." (Tr. 267-68)  Plaintiff also reported using a cane sometimes. (Tr. 269)

3

In a Disability report filed with SSA later that month, Plaintiff reported receiving treatment for her orthopedic conditions in 2019, at which time doctors recommended "surgery for her back or she will be paralyzed from the neck down." (Tr.  280) In a Disability Report filed with SSA dated June 1, 2020, Plaintiff reported she "sometimes requires assistance getting out of bed and just moving around in general" and that she "can only walk about 10 ft at time due to pain[.]" (Tr.  291)  Plaintiff stated her "whole left side" had "pins and needles from head to toes" and that she could no longer shower due to pain. (Tr.  291)

    C.  Vocational Expert's Testimony

Vocational expert Delores Gonzalez testified at the hearing. (Tr.  90) The ALJ asked Ms. Gonzalez to consider a hypothetical individual with Plaintiff's age, education, and work experience who is able to perform light work with the following limitations:

> stand and/or walk six hours; sit six hours; never climb ropes, ladders, or scaffolds; occasional climbing up some stairs; never bows…; occasional stoop, kneel, crouch, and crawl; …avoid moderate exposure to extreme cold, pulmonary irritants; and all exposure to unprotected heights and hazardous machinery[.]

(Tr.  90)

Ms. Gonzalez concluded that such an individual could perform jobs such as cashier II, photocopying machine operator, and price marker which are all light, unskilled positions. (Tr. 90-91) The ALJ modified the hypothetical to include occasional interaction with the public, co-workers, and supervisors. (Tr.  91) In response to the modified hypothetical, Ms. Gonzalez testified the individual would not be able to perform the cashier position but would be able to perform the job of mail sorter which is also a light, unskilled position.  (Tr.  91)  When the ALJ further modified the hypothetical to include "no direction or action with the public" and only casual or infrequent interaction with co-workers, Ms. Gonzalez testified the individual could perform the cited jobs.

(Tr. 91-92) When the ALJ limited the individual to "simple, routine tasks," Ms. Gonzalez stated that all of the cited jobs could be performed. (Tr. 91)

   D. <u>Opinions of the State-Agency Consultants</u>

On May 18, 2020, Paul Ross, D.O., a State-agency medical consultant, reviewed the record and opined that Plaintiff could perform light work with certain postural limitations.[3] (Tr. 117-118) After her initial denial of benefits, Plaintiff requested reconsideration of her application which the SSA granted. (Tr. 113-119, 120-125, 156-158) On June 10, 2020, Judee Bland, M.D., a State-agency medical consultant, reviewed the record and also opined that Plaintiff could perform light work with additional postural limitations. (Tr. 139-142)  In reaching this conclusion, Dr. Bland considered the medical records, including cervical and lumbar spine x-rays conducted in March 2019, as well as Plaintiff's complaints of worsening pain and loss of function as set forth in the April 2020 functional report and the June 2020 disability report. (Tr. 141)

   E. <u>Medical Records</u>

In regard to Plaintiff's medical records, the Court adopts the facts that the Commissioner admitted and that Plaintiff set forth in her statement of material facts. [ECF Nos. 13-1, 18-1] The Court also adopts the facts contained in the Commissioner's statement of additional facts because Plaintiff did not dispute them. [4]  [ECF Nos. 19-1].

**III.** **Standards for Determining Disability Under the Social Security Act**

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1); 42 U.S.C. §1381a.  The Act defines disability as the inability "to engage in any substantial gainful

---

[3] The SSA included Dr. Ross's opinion in its "Disability Determination Explanation" in denying Plaintiff's initial claim for benefits. (Tr. 114-119)

[4] Relevant medical records are discussed in detail below.

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A); See also 20 C.F.R. § 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(a), (c).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  RFC is "based on all relevant evidence including the medical records,

6

observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611; 20 C.F.R. § 416.920(f).

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 416.920(a), (g); 416.960(c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. § 416.920(g).

### IV.   ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since July 2, 2019, the onset date; and (2) had the severe impairments of degenerative disc disease, cervical dysplasia, chronic viral hepatitis C, asthma, and chronic pain syndrome. (Tr. 57)  The ALJ concluded Plaintiff had the non-severe impairments of depression and anxiety. (Tr.  57-58)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.  58) The ALJ determined Plaintiff had the RFC to:

7

>perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: she should never climb ropes, ladders or scaffolds but is able to occasionally climb ramps and stairs. The claimant should never balance [which is defined as walking, crouching or running on narrow, slippery, or erratically moving surfaces] but is able to occasionally stoop, kneel, crouch and crawl….[Plaintiff] should avoid moderate exposure to extreme cold and pulmonary irritants, and all exposure to unprotected heights and hazardous machinery.

(Tr. 59)

In making this assessment, the ALJ considered Plaintiff's reported conditions and symptoms, and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 60)  Specifically, the ALJ found Plaintiff's statements regarding the severity and limiting effects of her degenerative disc disease were inconsistent with the medical evidence; Plaintiff's known activities, including daily walking and continued smoking; and her minimal treatment. (Tr. 60-61)

The ALJ noted Plaintiff received minimal imaging and treatment since the July 1, 2019 decision finding Plaintiff capable of light work[5] and concluded that the record did not "support a basis to deviate significantly from the preceding decision, especially with routinely normal clinical findings and essentially the same objective findings with new evidence." (Tr. 61) The ALJ concluded that x-rays taken in October 2020 were similar to the CT scan MRIs from May 2019

---

[5] In the July 1, 2019 determination, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spine; chronic viral hepatitis C; asthma; cervical dysplasia; and chronic pain syndrome. (Tr. 101) The ALJ concluded Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) except Plaintiff could "lift and/or carry up to twenty pounds occasionally and ten pounds frequently; can stand and/or walk for about six hours and sit for up to six hours in an eight-hour work day, with normal breaks; can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds; can never balance…; can occasionally stoop, kneel, crouch and crawl; should avoid exposure to extreme cold; should avoid exposure to irritants such as fumes, odors, dust, gases and poorly ventilated areas; and should avoid unprotected heights and exposure to hazardous machinery." (Tr. 104)

and that, other than an appointment in October 2020, the treatment notes demonstrate Plaintiff reported no pain and moderate activity. (Tr. 60) The ALJ observed that Plaintiff's October 23, 2020 examination resulted in normal clinical findings, including sensation and strength. (Tr. 60)

The ALJ found the opinions of Dr. Ross and Dr. Bland, the State-agency non-consultative experts, limiting Plaintiff to light work with additional postural limitations to be generally persuasive. (Tr. 61) The ALJ concluded the October 2020 imaging "did not suggest worsening" and that Plaintiff's treatment records were consistent with the findings of Drs. Ross and Bland. (Tr. 62) Based on the RFC, Plaintiff's age, education, and work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform jobs that existed in significant numbers in the national economy, such as cashier II, photocopy machine operator, price marker, and mail sorter.[6] (Tr. 62-63) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 63)

## V. Discussion

Plaintiff argues the ALJ's RFC determination that Plaintiff is capable of light work is not supported by substantial evidence because the determination fails to account for the deterioration of Plaintiff's back condition. Specifically, Plaintiff asserts the ALJ erred in relying on the opinions of the state-agency consultants and did not properly evaluate Plaintiff's testimony that her back condition was worsening or the objective testing and evidence demonstrating a deterioration in Plaintiff's back impairment. More specifically, Plaintiff contends that updated imaging and the examination, diagnoses, and surgery recommendations by Rasheed Abiola's, M.D. support a finding that Plaintiff's back condition had deteriorated after the prior disability determination and the state-agency consultant opinions were offered. Plaintiff also asserts the ALJ erred by failing

---

[6] The ALJ found Plaintiff did not have any past relevant work. (Tr. 62)

9

to develop the record by seeking a medical opinion "given the worsening of [Plaintiff's] condition since the previous decision and the State agency consultants' opinions were issued."

In response, the Commissioner argues the ALJ properly evaluated all of the evidence in the record in rendering the RFC and sufficiently supported her determination with evidence from the record. Specifically, the Commissioner argues the ALJ properly evaluated Plaintiff's subjective complaints and the medical opinion evidence in light of the objective record. The Commissioner also asserts there was sufficient evidence in the record for the ALJ to make an informed determination regarding Plaintiff's RFC.

### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

    B. Physical RFC

Plaintiff challenges the ALJ's determination of her physical RFC. RFC is the most a claimant can perform in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. §416.945(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 416.945(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

    1. Alleged Deterioration of Plaintiff's Condition

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because it fails to account for the deterioration of Plaintiff's back condition. Specifically, Plaintiff asserts the cervical and lumbar spine imaging from May 2019 and October 2020, Dr. Abiola's surgical recommendations, and Plaintiff's testimony support a finding that Plaintiff's condition

11

has deteriorated and she is now capable of only sedentary work. Plaintiff further contends the ALJ erred in relying on the opinions of Dr. Ross and Dr. Bland in determining RFC because they did not consider the May 2019 and October 2020 imaging or Dr. Abiola's treatment notes in making their assessments.

The record demonstrates that Plaintiff complained of chronic neck and back pain before the July 2, 2019 onset date. (Tr.  446-590) A March 18, 2019 x-ray of Plaintiff's cervical spine revealed severe degenerative disc disease from C4-C5 through C7-T1, including "posterior end plate spurring with multilevel foraminal encroachment appearing more pronounced to the left than the right." (Tr.  469) An x-ray of Plaintiff's thoracic spine showed "questionable slight levo rotation or scoliosis of the mid to lower thoracic spine region" and "normal appearing lateral alignment." (Tr.  469)

On May 31, 2019, Plaintiff obtained additional imaging, including an MRI of her cervical spine and a CT and MRI of her lumbar spine, at Missouri Baptist Medical Center. (Tr.  9-50)  It appears that Plaintiff did not submit the records of these tests to the ALJ in the prior disability determination or in the current proceeding until her request for review with the Appeals Council.[7]

---

[7] In the prior decision dated July 1, 2019, the medical records were dated up to May 24, 2019. (Tr.  111-112) Plaintiff's representative filed medical records with the ALJ on June 6, 2019, which included orders for a CT scan and two MRIs but not the results. (Tr.  98) The ALJ did not leave the record open for those imaging results because there was no date set for the testing in the orders. (Tr.  98)

The record in the current proceeding demonstrates that Plaintiff's counsel requested these records from Missouri Baptist for the first time on October 19, 2020, the day of the hearing. (Tr.  322, 608) At the hearing, Plaintiff's counsel advised the ALJ that Plaintiff had submitted a request for the records from Missouri Baptist after initially sending the request to the wrong provider. (Tr.  73)  Plaintiff's counsel stated he believed 30 days would be sufficient to submit to the ALJ the medical records from both the May 2019 imaging and Plaintiff's upcoming appointment. (Tr.  73) The ALJ agreed to keep the record open for 30 days and advised plaintiff's counsel to "let me know" if he needed additional time. (Tr.  94) On November 23, 2020, Plaintiff's counsel supplied the ALJ with the medical records from Plaintiff's post-hearing examination with Dr. Abiola and advised the ALJ that he was "still waiting" for the records related to Plaintiff's May 2019 imaging. (Tr.  608) Counsel's letter did not request additional time in order to obtain the records. (Tr.  608)

After the ALJ's unfavorable decision, Plaintiff's counsel submitted the May 2019 records to the Appeals Council stating they were "[m]edical records received [from the provider] after the ALJ['s]

12

While the Missouri Baptist records were not directly before the ALJ, Dr. Abiola's interpretations of those tests were before the ALJ for consideration because they were included in the treatment notes for Plaintiff's post-hearing appointment.

On October 23, 2020, four days after the hearing, Plaintiff obtained x-rays of her cervical and lumbar spines and was examined by Dr. Abiola. (Tr.  609-617) With regard to her cervical spine, Plaintiff reported a pain score of 10/10, describing the pain as "pins and needles, headache, numbness, stabbing" and "constant[.]" (Tr.  609) As to her lumbar spine, Plaintiff reported a pain score of 8/10, describing the pain as "stabbing, throbbing" and "constant[.]" (Tr.  609)  During the examination, Plaintiff was not in acute distress and demonstrated normal sensation and strength in both her cervical and lumbar spines. (Tr.  610-11)

In his treatment notes, Dr. Abiola interpreted both the May 2019 and October 2020 imaging. Dr. Abiola found the May 2019 MRI of Plaintiff's cervical spine demonstrated diffuse "spondylosis…throughout the cervical spine[,]"  "anterolisthesis…at C2-3 and C3-4 with some retrolisthesis seen at C5-6, C6-7, and C7-T1," and "evidence of cord compression and bilateral foraminal stenosis at C5-6."[8] (Tr.  613).  Dr. Abiola found the October 2020 x-ray of Plaintiff's cervical spine demonstrated "diffuse spondylosis throughout[.]" (Tr.  613)

With regard to Plaintiff's lumbar spine, Dr. Abiola concluded the May 2019 imaging demonstrated "evidence of a grade 2 isthmic spondylolisthesis at L5-S1." (Tr.  613) Specifically, Dr. Abiola found the MRI showed "evidence of foraminal stenosis bilaterally compressing the

---

Unfavorable [decision]." (Tr.  9) Plaintiff's counsel asserted these records were "new and material evidence, medical records from, Missouri Baptist Hospital 5/31/2019 to 1/22/2021." (Tr.  10).
[8] Missouri Baptist's records submitted to the Appeals Council state the MRI of Plaintiff's cervical spine demonstrated "advanced multilevel spondylosis" with the "greatest canal stenosis at C5-C6, with severe bilateral foraminal narrowing" severe foraminal compromise on the right at C2-C3, on the left at C3-C4, bilateral at C4-C5 and C5-C6, and on the left at C6-C7 and C7-T1; and "levoconvex scoliosis and loss of lordosis." (Tr.  45-46).

existing nerve roots at L5-S1, affecting the left greater than the right" and that the CT scan showed "spondylosis was most prominent at L5-S1 with evidence of the isthmic spondylolisthesis, grade 2."[9] (Tr. 613) Dr. Abiola found the October 2020 x-ray of Plaintiff's lumbar spine demonstrated "evidence of a grade 2 isthmic spondylolisthesis at L5-S1" and "no coronal deformity[.]" (Tr. 612)

Based on the May 2019 and October 2020 imaging, Dr. Abiola diagnosed Plaintiff with: (1) "grade 2 isthmic spondylolisthesis at L5-S1 with bilateral L5 radiculopathy," (2) "cervical spondylosis with myelopathy," (3) "spondylolisthesis of [the] lumbar region," and (4) "spondylolisthesis of lumbosacral region." (Tr. 613) Dr. Abiola recommended four surgical interventions based, in part, upon his finding that Plaintiff had "significant functional impairment and [was] unable to perform activities of daily living" and that she had failed to gain significant improvement in her symptoms after having "participated in extensive conservative management," including the use of "prescription strength analgesics and active documented physical therapy or therapeutic exercises including stretching and strengthening." (Tr. 613-614)

On appeal, Plaintiff argues her testimony and the medical evidence, including the updated imaging and Dr. Abiola's examination and surgical recommendations, demonstrate that Plaintiff's back condition has deteriorated since the prior disability determination and when Drs. Ross and Bland offered their opinions on Plaintiff's RFC. Plaintiff contends the ALJ's RFC failed to account for Plaintiff's worsening condition and that the ALJ erred by relying on Dr. Ross and Dr. Bland's opinions because they were offered without the benefit of this evidence.

---

[9] Missouri Baptist's records submitted to the Appeals Council state the CT scan of Plaintiff's lumbar spine demonstrated "Grade 1-2 anterolisthesis L5 on S1 in the setting of chronic bilateral pars defects contributing to severe bilateral foraminal stenosis." (Tr. 36-37) The MRI of Plaintiff's lumbar spine demonstrated "bilateral L5 pars defects with extremely severe bilateral foraminal narrowing associated with the anterolisthesis" and "milder spondylotic changes otherwise as above, including left L2-L3 lateral recess disc extrusion with cephalad migration, but only causing mild deformity of the thecal sac[.]" (Tr. 41)

14

As an initial matter, the Court addresses Plaintiff's contention that the ALJ erred in relying on Dr. Ross's May 2020 opinion and Dr. Bland's June 2020 opinion because they were not based on the complete record, namely the May 2019 imaging and the October 2020 imaging and examination conducted by Dr. Abiola. While the October 2020 medical evidence was obviously obtained after Dr. Ross's and Dr. Bland's opinions were written, the May 2019 imaging was conducted well before their opinions were offered. However, neither doctor had the opportunity to consider this evidence because Plaintiff did not timely submit these records for consideration during the administrative proceeding.[10]

Furthermore, the fact that Plaintiff received additional treatment and objective testing following Dr. Ross's and Dr. Bland's opinions does not invalidate their opinions or render their opinions unreliable.  The ALJ was aware of Plaintiff's subsequent testing and treatment because the medical records and other evidence related to those events were in the record before the ALJ, including Dr. Abiola's interpretations of the May 2019 and October 2020 imaging. In assessing Plaintiff's functional limitations and RFC, the ALJ considered not only Dr. Ross's and Dr. Bland's medical opinions but also the medical records, including Dr. Abiola's treatment notes, and Plaintiff's testimony and self-reported activities of daily living. (Tr.  60-62) Ultimately, the ALJ concluded that Plaintiff possessed greater postural and environmental limitations than opined by Dr. Ross and Dr. Bland, finding Plaintiff should never balance and should avoid moderate exposure to extreme cold and pulmonary irritants, and all exposure to unprotected heights and

---

[10] The claimant has the burden of proving his or her disability and has an ongoing duty to "submit all evidence known to [the claimant] that related to whether or not you are…disabled[.]" 20 C.F.R. §404.1513(a)(1). The evidence in the record "must be complete and detailed enough to allow [SSA] to make a determination or decision about whether you are disabled" and must allow SSA to determine the nature and severity of the claimant's impairment, whether the duration requirement is met, and the claimant's RFC.  20 C.F.R. §404.1513(a)(2).

hazardous machinery. (Tr.  59, 117-118, 140). Because Dr. Ross and Dr. Bland's opinions were sufficiently current and supported by their review of the record, the Court finds the ALJ did not err in concluding their opinions were generally persuasive in determining Plaintiff's physical RFC.

Plaintiff also argues the ALJ's RFC determination failed to account for the deterioration of Plaintiff's back condition, as demonstrated by Plaintiff's testimony, Dr. Abiola's October 2020 examination and surgical recommendations, and the October 2020 objective testing.

The ALJ found the October 2020 examination did not support a finding that Plaintiff "was as limited as [she] claimed" and that the imaging "did not suggest worsening[.]" In doing so, the ALJ noted that Plaintiff's October 2020 x-rays were similar to her CT scan and MRIs from May 2019, which all showed "grade 2 isthmic spondylolisthesis (referred to by the treating source as grade 1), stenosis compressing the exiting nerve root at L5-S1 bilaterally, and anterolisthesis/diffuse spondylosis with evidence of cord compression and bilateral foraminal stenosis in the cervical spine at one level, C5-C6." (Tr.  60)  Plaintiff does not contend that Dr. Abiola misinterpreted the May 2019 imaging or dispute the ALJ's finding that the May 2019 imaging was substantially similar to the October 2020 x-rays, as observed by Dr. Abiola. Thus, the ALJ's conclusion that the objective testing did not demonstrate a worsening in Plaintiff's condition over the relevant time period is supported by substantial evidence in the record.

Plaintiff maintains that Dr. Abiola's October 2020 recommendation that Plaintiff undergo surgery to correct her conditions evidences a deterioration in her condition. The record, however, does not support this conclusion. Plaintiff testified at the hearing that an orthopedist recommended in 2019 that she undergo surgery to correct her conditions or risk paralysis based on the May 2019 imaging. (Tr.  77, 86-87) This representation was also present in the April 16, 2020 disability report, where Plaintiff reported her orthopedist recommended she undergo "surgery for her back

16

or she will be paralyzed from the neck down." (Tr. 280)  Plaintiff further testified, prior to her appointment with Dr. Abiola, that her "spine is deteriorating," she "has bone spurs in her neck and lower back," and her lower "back is broken in three places[.]" (Tr. 77) Plaintiff's treatment records also demonstrate that Plaintiff was diagnosed with advanced osteoarthritis of the lumbar and cervical spines with bone spurs in 2010 "but she declined surgery at that time." (Tr. 525) Simply stated, the record establishes that Dr. Abiola's October 2020 surgical recommendations were not novel recommendations based on a deterioration of Plaintiff's condition but were duplicative of prior diagnoses and recommendations based largely on objective testing performed prior to the onset date.

The ALJ also did not err in evaluating Plaintiff's testimony in determining her RFC. At the hearing, Plaintiff testified she was now "mentally ready" for surgery and that she scheduled an appointment with an orthopedist "[b]ecause I'm really getting bad. My back's really getting bad, it's really getting [worse], and I've got to do these surgeries." (Tr. 87). The ALJ correctly concluded that the objective testing did not support Plaintiff's assertion that her back condition had deteriorated over the relevant time period. As already discussed, the record demonstrates, by contrast, that the results of Plaintiff's May 2019 and October 2020 imaging were substantially similar.

    2. <u>Duty to Develop the Record</u>

Plaintiff also asserts that the ALJ should have sought an updated medical opinion regarding Plaintiff's RFC "given the worsening of [Plaintiff's] condition since the previous decision and the State agency consultant' opinions were issued."  In response, the Commissioner argues the ALJ was not required to seek additional medical opinions and that the ALJ could rely on the relevant evidence contained in the record in determining Plaintiff's RFC.

17

The ALJ "has a duty to fully and fairly develop the evidentiary record." Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012). In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before rendering a decision. See 20 C.F.R. §404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." McCoy, 648 F.3d at 612. "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir.1984)).

Here, the ALJ had the opinions of two State-agency non-examining consultants, offered in May and June of 2020, well within the relevant time period. Although these consultants did not have the benefit of reviewing the May 2019 or October 2020 imaging when offering their opinions, the ALJ concluded that these objective tests, as well as the medical evidence and other evidence in the record, did not support a finding that Plaintiff's back condition had worsened over the relevant period.

Furthermore, in assessing Plaintiff's functional limitations and RFC, the ALJ considered not only Dr. Ross's and Dr. Bland's opinions but also the medical records, Plaintiff's minimal treatment, and Plaintiff's testimony and self-reported activities of daily living. (Tr. 60-62) While Plaintiff reported pain at appointments with her primary care provider prior to the onset date and at the October 2020 examination with Dr. Abiola, during the relevant time period Plaintiff's primary care provider consistently documented normal clinical finding and Plaintiff routinely reported engaging in moderate activity, including occasionally walking for exercise, and experiencing no pain. (Tr.  446-590, 609-617).

Furthermore, the record demonstrates that Plaintiff sought little treatment for her spinal conditions over the relevant period and, contrary to Dr. Abiola's treatment notes, there are no records evidencing that Plaintiff participated in physical therapy. The slim treatment records are inconsistent with Plaintiff's self-reported inability to engage in *any* activity other than microwaving food and talking to her son and roommate. Given the evidence of Plaintiff's diagnoses and symptoms in the record, this is not a case in which a crucial issue was undeveloped and it was not necessary for the ALJ to obtain additional medical opinions regarding her conditions. Here, the ALJ properly considered Plaintiff's medical records, the medical opinion evidence, Plaintiff's testimony, and the other evidence in the record in determining Plaintiff's RFC. Based on the foregoing, the Court finds substantial evidence on the record supported the ALJ's RFC determination.

### VI. Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2023